# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

FILED
97 MAR 26 PM 3: 16
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **RAY WAYNE BEAVERS, et al.,** | ] | |
| Plaintiffs, | ] | |
| vs. | ] | CV-86-N-1982-S |
| **AMERICAN CAST IRON PIPE COMPANY,** | ] | |
| Defendant. | ] | |
| | | |
| **OSCAR JENKINS, et al.,** | ] | |
| Plaintiffs, | ] | |
| vs. | ] | CV-88-N-0933-S |
| **AMERICAN CAST IRON PIPE COMPANY,** | ] | |
| Defendant. | ] | |
| | | |
| **ROGER DALE MILLER, et al.,** | ] | |
| Plaintiffs, | ] | |
| vs. | ] | CV-91-N-2999-S |
| **AMERICAN CAST IRON PIPE COMPANY,** | ] | |
| Defendant. | ] | |

ENTERED
MAR 26 1997



**Memorandum of Opinion**

## I.  Introduction

The plaintiffs bring this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended. Specifically, the plaintiffs allege the defendant, American Cast Iron Pipe Company ("ACIPCO"), discriminated against them based on race[1] and sex (male). The plaintiffs also claim the defendant violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1). The Intervenor, Equal Employment Opportunity Commission ("EEOC"), brings this action pursuant to Title VII, alleging discrimination on the basis of sex (male) only.

The court bifurcated the trial, deciding the issues regarding liability in Stage I. In December 1995, a jury found ACIPCO intentionally discriminated against past and present male employees and male pensioners on the bases of sex and race. No evidence regarding potential monetary relief was presented during December 1995 trial. Stage II of the trial shall decide the damages issues.

The court presently has for consideration defendant's motion for partial summary judgment filed April 10, 1996. Specifically, the defendant claims (1) the court, rather than the jury, must determine the amount of any back pay award, and (2) plaintiffs are not entitled to punitive damages. The parties have been afforded an opportunity to be heard by written brief, and upon due consideration, the motion will be granted.

---

[1] Plaintiffs' race claim is also brought under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended.

## II. Statement of Facts

These cases have been consolidated for all purposes and the Title VII claims have been certified to proceed as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure. The class consists of past and present male employees of ACIPCO who have had a child declared ineligible to receive benefits under the company's former residency requirement contained in its medical and dental benefits plan.

The controversy in this case arises out of the former provision in ACIPCO's medical and dental benefits plan which provided, in pertinent part, that children of regular employees and pensioners shall be eligible for all benefits provided by the plan if the child "resides full-time with a regular employee or pensioner." A child who had been certified as eligible to receive medical and dental benefits under the plan but subsequently ceased to reside full-time with the employee or pensioner was removed as an eligible dependent entitled to coverage.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322-23; *see* Fed. R. Civ. P. 56(a) and (b). There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial, however he may not merely rest on his pleadings. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After a properly made motion has been properly responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine wether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1989). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion

### A. Whether the Court or the Jury Should Determine the Amount of Back Pay Damages

Title VII explicitly states that back pay is "equitable relief" that the "court" may deem appropriate. 42 U.S.C. § 2000e-5(g).[2] *See also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415-18, 95 S. Ct. 2362, 2370-72, 45 L. Ed. 2d 280 (1975) (showing that traditionally back-pay has been treated as an equitable remedy). Therefore, the plaintiffs are not entitled to have a jury determine the amount of back pay damages, if any, awarded in this action. *Waldrop v. Southern Co. Services, Inc.*, 24 F.3d 152, 156 (11th Cir. 1994) ("[T]he right to a jury trial does not extend to cases in which only equitable rights are at stake."), citing *Curtis v. Loether*, 415 U.S. 189, 194, 94 S. Ct. 1005, 1008, 39 L. Ed. 2d 260 (1974).

The plaintiffs provide several arguments to support their position that the jury should determine the amount of any back pay awards. However, the court finds none of them convincing. First, the plaintiffs claim the defendant waived its right to have the court decide the back-pay issues because the defendant agreed in the pretrial order that "[t]he same jury as determined the issue of liability shall then return for a Stage II trial of the issue of back-pay, damages and other appropriate relief." *Plaintiffs' Memorandum in Opposition*

---

[2] 42 U.S.C. § 2000e-5(g):

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without *back pay* . . . or *any other equitable relief* as the court deems appropriate.

(emphasis added). Moreover, 42 U.S.C. § 1981(b)(2) provides that, "Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964."

6

*to Summary Judgment*, at 22. However, the plaintiffs fail to cite other parts of the pretrial order which show the defendant did not waive the back-pay issue. For example, under the subtitle "Defendant's Position" in the pretrial order, the defendant expressly asserts that "[p]laintiffs are not entitled to a jury trial with the exception of the *Miller* plaintiffs' Equal Pay Act claims." Pretrial Order, *Movant's Initial Submission in Response to Exhibit D of the Court's Order*, Exhibit 1, at 11. The defendant also points out that "[w]hile section 6(d) of the pre-trial order, entitled 'Bifurcation,' does state that '[t]he same jury as determined the issue of liability shall then return for a Stage II trial *of* the issue of back-pay, damages and other appropriate relief,' the pre-trial order does *not* state that the jury will *decide* the amount of back pay owed to the class members." *Movant's Reply Submission in Response to Exhibit D of the Court's Order*, at 2 (emphasis in original).[3]

Second, the plaintiffs argue that a legal and equitable action is being tried together, thus the right to a jury trial in the legal action encompasses the issues common to both. *See Lincoln v. Board of Regents of the University System of Georgia*, 697 F.2d 928, 934 (11th Cir. 1983). The plaintiffs point to an opinion decided in the United States District Court of Maine, where the court noted "practical concerns" with separating back-pay and compensatory damages. *Braverman v. Penobscot Shoe Co.*, 859 F. Supp. 596, 606 (D. Me. 1994). The Maine court stated:

---

[3] Other parts of the pretrial order discount the plaintiffs' "waiver" argument. For instance, the pretrial order states "[i]f the plaintiffs and the EEOC prevail in the liability phase, then all the parties will be allowed to present evidence . . . to aid *the court* and/or jury in assessing appropriate remedies, if any, including monetary relief." *Movant's Initial Submission in Response to Exhibit D of the Court's Order*, Exhibit 1, at 15 (emphasis added). The pretrial order also states that the evidence received during the Stage II "jury trial shall also be received for the purpose of the claims and proceedings to be decided non-jury by the Court." *Id.*

7

As the First Circuit explained in connection with a 42 U.S.C. § 1983 claim of political firing before the [Civil Rights Act of] 1991 amendments:

> there is . . . a sound practical reason for having the jury factor in back pay when determining compensatory damages. Submission of the issue of back pay to the jury as a factor to be considered in its award of compensatory damages eliminates the inevitable overlap between compensatory damages and back pay. In most cases of an alleged unconstitutional firing, there will be evidence of the employee's pay. To expect a jury to ignore this is unrealistic, especially where it may constitute the major item of compensatory damages.

*Braverman*, 859 F. Supp. at 606, n.6, quoting *Santiago-Negron v. Castro-Davila*, 865 F.2d 431, 441 (1st Cir. 1989). Although that court pointed out possible problems with having the jury determine compensatory damages and the court determine back-pay, the court still held that back-pay damages issues would be decided by the court because "Congress . . . expressly excluded back-pay from the definition of 'compensatory' damages." *Braverman*, 859 F. Supp. at 606.

Third, the plaintiff cites *Waldrop v. Southern Company Services*, 24 F.3d 152, 157 (11th Cir. 1994) for the proposition that a back-pay claim should be heard by a jury, not the court.[4] However, *Waldrop* addressed the Age Discrimination in Employment Act ("ADEA"), where a back pay award is legal in nature, not equitable.

Because Congress has expressly excluded back-pay from the definition of compensatory damages, the court, not the jury, shall determine the amount of any back pay award.

---

[4] In *Waldrop*, the Eleventh Circuit held that a district court improperly denied a plaintiff a jury trial "because a back pay award in an [ADEA] action is legal in nature, thereby creating a Seventh Amendment jury trial right." *Waldrop*, 24 F.3d at 157.

### B. Whether the Defendant Is Entitled to Punitive Damages as a Matter of Law

The defendant contends the plaintiffs are not entitled to seek punitive damages as a matter of law. To recover punitive damages in a Title VII disparate treatment case, the plaintiffs must prove the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The defendant claims the plaintiffs have not created a question of material fact that it acted maliciously or recklessly after November 21, 1991, the effective date of the Civil Rights Act of 1991. *Movant's Initial Submission in Response to Exhibit D of the Court's Order*, at 12.

The plaintiffs, on the other hand, claim that when a jury finds the defendant instituted an intentional policy of discrimination, whether punitive damages should be awarded automatically becomes a jury question.[5] Therefore, the plaintiffs argue that summary judgment is not the appropriate vehicle to decide whether they are entitled to punitive damages. The plaintiffs rely on *Smith v. Wade*, 461 U.S. 30, 51, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983), to support their position. In *Smith*, the United States Supreme Court held "that reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." *Smith*, 461 U.S. at 51.[6]

---

[5] Specifically, the plaintiffs claim that under the standard set forth in 42 U.S.C. § 1981a(b)(1) they "are not required to show anything more than the intentional violation of the Act that established liability in order to have a jury determine whether punitive damages should be assessed." *Plaintiffs' Memorandum in Opposition to Summary Judgment*, at 1.

[6] The claim in *Smith v. Wade* was brought under 42 U.S.C. § 1983.

However, the plaintiffs are incorrect in claiming *Smith* holds that a jury always decides whether punitive damages are warranted in Title VII cases where intentional discrimination has been established. As the First Circuit Court of Appeals stated in *Hernandez-Tirado v. Artau*, 874 F.2d 866, 868 (1st Cir. 1989), the Supreme Court in *Smith* "was simply rejecting the claim that *lack* of intent to cause harm automatically bars punitive damages." In *Smith* itself, the Supreme Court states that "*if*" the defendant's conduct is "outrageous" and "calls for deterrence and punishment over and above that provided by compensatory awards . . . *then* it is appropriate to allow a jury to assess punitive damages." *Smith*, 461 U.S. at 54 (emphasis added).[7] In *Walters v. City of Atlanta*, the Eleventh Circuit held that a jury improperly awarded punitive damages even though the plaintiff was "the victim of repeated discriminatory acts." *Walters*, 803 F.2d 1135, 1147 (11th Cir. 1986).[8] The Eleventh Circuit found the defendants in *Walters* did not act with "either the requisite ill will or callous disregard of [the plaintiff's] federally guaranteed rights." *Walters*, 803 F.2d at 1147. *See also Artau*, 874 F.2d at 868 (holding that the Supreme Court in *Smith v. Wade* did not allow a jury to assess punitive damages in every instance where it finds intentional

---

[7]The Supreme Court stated:

> This common-law rule makes sense in terms of the purposes of punitive damages. Punitive damages are awarded in the jury's discretion "to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." Restatement (Second) of Torts § 908(1) (1979). The focus is on the character of the tort-feasor's conduct—whether it is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards. If it is of such a character, then it is appropriate to allow a jury to assess punitive damages; and that assessment does not become less appropriate simply because the plaintiff in the case faces a more demanding standard of actionability.

*Smith*, 461 U.S. at 54.

[8]The Eleventh Circuit has held that "[p]unitive damages are disfavored by the law and are awarded solely to punish defendants and deter future wrongdoing." *Walters v. City of Atlanta*, 803 F.2d 1135, 1147 (11th Cir. 1986).

10

conduct); *Ivey v. Wilson*, 832 F.2d 950, 958 (6th Cir. 1987) (holding that a jury award of punitive damages in a § 1983 action could not stand where the defendant's conduct was not motivated by evil motive or reckless or callous indifference); *Lavicky v. Burnett*, 758 F.2d 468, 477 (10th Cir. 1985) (holding that a reasonable punitive damages award in a § 1983 action should not be set aside "unless the issue should not have been submitted to the jury in the first place"). Therefore, in the present case, there must be a material question of fact whether defendant ACIPCO acted maliciously or recklessly before it is appropriate to allow a jury to assess punitive damages. After examining the record, the court finds there is not a material question of fact whether malicious or reckless conduct occurred during any period when punitive damages are available under the law.

For purposes of this case, a discriminatory act occurring before November 21, 1991 "may constitute relevant background evidence . . . , but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Air Lines v. Evans*, 431 U.S. 533, 558 (1977). In the present case, the only discriminatory act the plaintiffs can point to that allegedly occurred after November 21, 1991, is that the defendant continued to apply the policy even though there were EEOC charges and a lawsuit pending against it. *See Plaintiffs' Memorandum in Opposition to Summary Judgment*, at 8. The court finds that such behavior is neither "outrageous" nor "reckless" and that "punishment over and above that provided by compensatory awards" is not appropriate when the defendant simply continued to apply a policy which it believed did not violate Title VII and which it chose to defend in court. When law was created that clearly held the defendant had to provide coverage benefits for all dependants regardless of residence,

11

*see* Omnibus Budget Reconciliation Act of 1993, 29 U.S.C. § 1169; Alabama Medical Support Health Care Access Act, *Ala. Code* § 27-21B-1, *et. seq.* (Supp. 1995), ACIPCO promptly changed its policy.

## V.    Conclusion

The defendant's motion for partial summary judgment will be granted. The court, not the jury, shall decide all issues regarding back pay. The plaintiffs' claims for punitive damages will be dismissed with prejudice.

Done, this **26th** of July, 1996.

                                            _____
                                            Edwin L. Nelson
                                            United States District Judge