IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RAY WAYNE BEAVERS, et al., ) ) ) | |
| Plaintiffs, ) ) | |
| EQUAL EMPLOYMENT OPPORTUNITY ) COMMISSION, ) ) | CIVIL ACTION NOS. |
| Plaintiff-Intervenor, ) ) | CV-86-N-1982-S CV-88-N-933-S |
| vs. ) ) | CV-91-N-2999-S |
| AMERICAN CAST IRON PIPE ) COMPANY, ) ) | ENTERED |
| Defendant. ) | JAN 0 3 2001 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On January 3, 2001, this Court entered a Final Judgment giving final approval to the terms of a Consent Decree resolving all outstanding issues in the above-styled actions. The Consent Decree was tentatively approved on September 6, 2000. These findings of fact and conclusions of law are entered in support of the Court's final judgment.

## SUMMARY OF PRIOR PROCEEDINGS

On October 24, 1986, Ray Wayne Beavers filed the original complaint in these cases against his employer, American Cast Iron Pipe Company ("Acipco"), on behalf of himself and a putative class consisting of certain past, present, and future male Acipco employees (hereinafter the "Beavers complaint"). The Beavers complaint alleged violations of Title VII of the Civil Rights Act of 1964,

748124.4



42 U.S.C. §§ 2000e et seq. ("Title VII"), and of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1) ("EPA") on the basis of sex by reason of exclusion of nonresident children of certain male employees from coverage under the Acipco Medical and Dental Benefits Plan (the "Acipco Plan"). The Beavers complaint was amended on October 27, 1986, to add Oscar Jenkins and Terry Chaffin as plaintiffs. Defendant answered the Beavers complaint on November 17, 1986, denying the material allegations contained therein. Plaintiffs filed a second amended complaint on May 11, 1987, to assert claims pursuant to the Employee Retirement Income Security of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"). On July 1, 1987, Judge William M. Acker dismissed the individual claims and denied class certification in the Beavers case. This dismissal was appealed to the United States Court of Appeals for the Eleventh Circuit.

While the dismissal of the Beavers case was pending on appeal, plaintiff James Dollar filed a motion to intervene in the case on August 17, 1987. Plaintiffs Charles Harmon and Richard Johnson filed a similar motion to intervene on September 24, 1987. All motions to intervene were denied by Judge Acker.

On June 8, 1988, plaintiffs Oscar Jenkins and James Dollar filed a complaint (hereinafter the "Jenkins complaint"). This complaint contained substantially the same allegations as those asserted in the Beavers complaint. On August 1, 1988, the Jenkins complaint was amended to add Richard Johnson as a plaintiff and to add a claim for race discrimination under Title VII of the Civil Rights Act of 1964.

On August 15, 1988, the Eleventh Circuit Court of Appeals vacated the district court's denial of class certification, reversed the dismissal of the Beavers case, and remanded it to the district court for further proceedings. See Beavers v. American Cast Iron Pipe Co., 852 F.2d 527 (11th Cir. 1988).

Thereafter, on October 17, 1988, Judge Acker permitted plaintiffs Harmon and Johnson to intervene in the Beavers case as additional named plaintiffs and class representatives.[1] The complaint in intervention was filed on October 18, 1988, by Harmon and Johnson. On December 20, 1988, the Court ordered that the Jenkins case and the Beavers case be consolidated. In the consolidated cases, Beavers, Jenkins, Chaffin, Harmon, Dollar, and Johnson were certified as class representatives of a class described and composed of "all male employees, former employees, and prospective employees of defendant, American Cast Iron Pipe Company."

On November 21, 1990, after extensive discovery, the undersigned Judge, to whom the consolidated cases were assigned, granted defendant's motion for summary judgment and dismissed all claims asserted in the Beavers and Jenkins cases. Plaintiffs appealed this Court's decision to the Eleventh Circuit Court of Appeals. The Eleventh Circuit, in an opinion dated October 19, 1992, reversed and remanded the portion of this Court's decision dismissing plaintiffs' Title VII claims, but affirmed summary judgment in favor of Acipco with respect to the EPA and ERISA claims. See Beavers v. American Cast Iron Pipe Co., 975 F.2d 792 (11th Cir. 1992).

While the appeal was pending before the Eleventh Circuit, Roger Miller filed a complaint against Acipco on December 23, 1991, claiming individual violations of Title VII and the EPA for ninety-nine (99) plaintiffs and others similarly situated (hereinafter the "Miller complaint"). Each of the plaintiffs in the Miller complaint alleged as follows: (a) one or more female employees at Acipco have worked on jobs involving equal skill, effort and responsibility which were performed under similar working conditions as held by plaintiffs; and (2) those women were provided medical and

---

[1] The motion to intervene filed by Dollar was not ruled on because Dollar had filed a separate action (i.e. the Jenkins complaint).

748124.4                                    3

dental benefits for their children as a part of their compensation which the plaintiffs were not provided. On July 23, 1992, the Equal Employment Opportunity Commission ("EEOC") became a party to the Miller case by intervention. The EEOC claimed a violation of Title VII, alleging discrimination on the basis of sex only. The Miller case was consolidated with Beavers and Jenkins and assigned to the undersigned Judge on October 4, 1993 (hereinafter collectively referred to as the "Beavers lawsuit" or "this lawsuit").

In November 1993, defendant filed a motion to dismiss the EPA claims brought by plaintiffs in the Miller case, asserting that plaintiffs failed to state a claim upon which relief could be granted. This Court referred defendant's motion to Magistrate Judge T. Michael Putnam pursuant to LR72.1(b)(4)(E). Magistrate Judge Putnam denied defendant's motion to dismiss in the Miller case on July 19, 1994. The magistrate judge also denied defendant's motion for summary judgment with respect to plaintiffs' Title VII sex discrimination claims asserted in the Beavers and Jenkins cases.

On November 3, 1995, the Court entered a Pretrial Order more specifically defining the class as all past and present male employees of the defendant who have had a child declared ineligible to receive benefits as a result of defendant's former residency requirement contained in its medical and dental benefits plan. The Court bifurcated the trial of the consolidated lawsuits into two stages: liability and monetary relief. The liability stage was tried before a jury from December 11, 1995 to December 21, 1995. The jury returned a verdict in favor of plaintiffs on both their Title VII sex and race disparate treatment (intentional discrimination) claims; however, a final judgment was not entered by the Court.

Shortly after the trial, the parties entered into mediation efforts before Mediator James Alexander. This mediation was unsuccessful, and therefore, the parties entered Stage II of the

litigation, also known as the monetary relief stage. On February 26, 1996, the Court approved defendant's proposed interrogatories and requests for production to all named plaintiffs and class members. On April 18, 1996, the Court ordered that all putative class members who had not responded to defendant's interrogatories and requests for production must do so by May 1, 1996, or their claims for monetary relief could be dismissed. In addition, the Court ordered that all putative class members who had provided incomplete responses to defendant's interrogatories and request for production must supplement their answers and responses before May 1, 1996, or their claims for monetary relief could be dismissed. The plaintiffs moved the Court for an extension of time to supplement their answers to defendant's interrogatories and respond to defendant's requests for production, and the Court granted the extension. In the Trial Preparation Plan, the Court stated that each employee "must have responded to Acipco's interrogatories and requests for production of documents, approved by the Court . . . on or before April 30, 1998" to be a class member in the Beavers consolidated lawsuits. Any class member who did not comply with this requirement was not entitled to proceed to Stage II.

Defendant filed a motion for partial summary judgment on April 10, 1996, arguing that the Court, rather than the jury, should determine the amount of back pay and that plaintiffs were not entitled to punitive damages. The Court granted defendant's motion for partial summary judgment on both issues and dismissed plaintiffs' claim for punitive damages with prejudice on March 26, 1997.

On January 9, 1998, the Court entered an order further defining eligibility criteria to govern the Stage II proceedings. In the order, the Court ruled that the class was limited to those class members who could have filed a timely EEOC charge as of May 23, 1983, the date that plaintiff Beavers filed his charge. The Court also ruled that the period of back pay terminated on October 10,

1993, for those employees whose dependents qualified for enrollment in the Acipco Plan as of August 10, 1993, under the Omnibus Budget Reconciliation Act ("OBRA"), or no later than May 4, 1994, when the Acipco residency rule was abolished for all other class members. Third, the Court determined that the appropriate measure of back pay under the circumstances of this lawsuit is the actual economic loss, if any, suffered by each named plaintiff and class member rather than a formula-based back pay calculation.

The Court entered a Trial Preparation Plan on April 17, 1998, in which the Court essentially divided the Stage II proceedings into four (4) distinct phases aimed at narrowing the issues and promoting resolution of factual disputes. The first three phases were to be presided over by a Special Master appointed by the district court. The Honorable Stuart Leach was appointed as Special Master of these proceedings.

The first phase was intended to resolve which class members were, in fact, eligible to participate at Stage II. The parties submitted a stipulated list of class members, but disagreed as to the eligibility of four (4) class members. The dispute as to those four (4) class members were submitted to Special Master Leach at an evidentiary hearing held on July 28-29, 1998. The parties resolved the status of two (2) of the class members but the status of the other two (2) putative class members remain pending before the Special Master.

The second phase was designed to define the class members' claims by determining the identity of each child excluded from coverage under the Acipco Plan by the former residency provision and the beginning and ending dates of such exclusion. There were a total of seventeen (17) class members whose eligibility dates were submitted to the Special Master at hearings held on August 17-21, 1998. The Special Master did not rule on this matter prior to the parties entering into

their settlement agreement. The remainder of the eligibility periods were agreed upon by the parties.

The third phase was designed to determine the amount of back pay to which each plaintiff and class member would be entitled. The parties scheduled a hearing for each of the named plaintiffs and class members over a period of time beginning in August of 1998 and extending into March of 1999. The parties engaged in extensive conciliation discussions during the course of this phase, and as a consequence, the bulk of the claims were determined by agreement between the parties, with only approximately twenty-five (25) claims actually being heard by the Special Master. The parties continued to try to resolve these disputed back pay claims and ultimately only fifteen (15) claims remained for the Special Master to resolve.

The final phase of the Court's Trial Preparation Plan involved determining which class members were entitled to assert claims for compensatory damages, in addition to back pay, under the Civil Rights Act of 1991, 42 U.S.C. § § 2000e et seq., ("the 1991 Act") and the basis for these claims. From mid-1999 to early-2000, the parties deposed most of the class members entitled to assert claims for such damages. During this phase, the parties also resolved some class members' claims for compensatory damages. At the end of this phase, only one hundred and sixty (160) of the original two hundred and fifteen (215) class members asserting claims for compensatory damages remained with unresolved and/or disputed 1991 Act claims.

At the time of the parties' settlement, three hundred and thirty-five (335) plaintiffs and class members remained with claims for monetary relief based on this Court's orders. There were also twelve individuals who were precluded by this Court's order because they had claims that fell between May 23, 1981 and November 24, 1982. For resolution purposes only, these twelve individuals are considered plaintiffs and class members. Of the three hundred thirty-five (335), one hundred and

twenty (120) were not entitled to any relief under the 1991 Act because their eligibility terminated before the effective date of the Act. Furthermore, fifty-five (55) of the two hundred and fifteen (215) class members who asserted 1991 Act claims for compensatory damages were resolved between the parties.

On April 20, 2000, the parties again attempted mediation before Mediator James Alexander. As a result of this mediation, the parties were able to reach the terms of the proposed Consent Decree.

The proposed Consent Decree is an agreement that the parties have reached which, if approved by the Court, will resolve all matters in any way relating to any aspect of these cases, including both equitable and monetary relief as well as compensatory damages and any attorneys' fees and expenses in connection therewith. The named plaintiffs, the class representatives, the EEOC and the attorneys for plaintiffs and the EEOC believe that the proposed settlement is in the best interest of the class and they recommend that the proposed Consent Decree be approved and accepted by all class members.

On September 6, 2000, the parties filed their Joint Motion and Stipulation requesting the Court (1) to conditionally approve the settlement class as all past and present male employees of the defendant who have had a child declared ineligible to receive benefits as a result of defendant's former residency requirement contained in its medical and dental benefits plan; (2) to grant tentative approval to the proposed Consent Decree attached to the motion; (3) to approve the Notice to be sent to the plaintiffs and the plaintiff class; (4) to direct plaintiffs' counsel to send a copy of the Notice to the last known address of each plaintiff and class member, providing proof of mailing to defendant's counsel; and (5) to set a date for hearing of objections, if any, to the proposed Consent Decree.

On September 6, 2000, after reviewing the Joint Motion, the proposed Consent Decree, the Notice to be sent to the named plaintiffs and plaintiff class, the arguments of counsel and the applicable law, this Court entered its Order giving preliminary approval or tentative approval to the proposed Consent Decree based on the finding that (1) there has been a showing that the settlement is fair, reasonable and adequate sufficient to warrant submitting it to the class; and (2) the terms of the proposed Consent Decree were reached through extensive arms-length negotiations between the parties. In addition to tentatively approving the proposed Consent Decree, the Court also gave final approval of the Notice and ordered the plaintiffs to send a copy of the approved notice to each plaintiff and each class member. Finally, the Court set a hearing on December 8, 2000, to hear objections to the proposed Consent Decree and to determine whether the proposed Consent Decree should be finally approved.

Thereafter, one (1) objection was filed by a class member. On December 8, 2000, the fairness hearing was held as scheduled, with Magistrate Judge Paul W. Greene presiding. The Court first inquired as to whether the provisions of the Consent Decree requiring mailing of notices to the plaintiffs and class members had been complied with by the plaintiffs. At that point, counsel for plaintiffs submitted two affidavits, which had been previously filed, certifying that the notice requirements of the Consent Decree had in fact been complied with by the plaintiffs. Counsel for plaintiffs was available during the notice period to assist any member of the class who had questions about the settlement or who otherwise needed advice.

The Court then asked the proponents of the settlement to state why the settlement should be approved as fair, reasonable and adequate. Counsel for all parties gave their reasons which are

discussed in the remainder of this opinion. Thereafter, the Court entered its final judgment giving final approval of the Consent Decree.

## SUMMARY OF TERMS OF CONSENT DECREE

The Consent Decree is an agreement which will resolve all matters in any way relating to the issues involved in these three consolidated cases. A summary of the terms of the Consent Decree are set forth below.

1. The individuals who will be bound by the Consent Decree are the same individuals who are the plaintiffs, the class representatives and members of the plaintiff class, specifically, all past and present male employees of the defendant who have had a child declared ineligible to receive benefits as a result of defendant's former residency requirement contained in the Acipco Plan.

2. The defendant will pay to the plaintiffs, the plaintiff class and their attorneys a total sum of Five Million Dollars ($5,000,000.00) in complete satisfaction for all claims for monetary relief, including, but not limited to, back pay, compensatory damages, punitive damages, attorneys' fees, interest, expenses, expert witness fees and court costs (of both the plaintiffs and the United States Equal Employment Opportunity Commission), that any plaintiff or class member may have or may have had at any time up to the date of the Decree. Distribution of the settlement proceeds has been determined by plaintiffs' counsel and approved by the Court. A listing of the individual amounts was filed with the Court prior to the Court's tentative approval of the proposed Consent Decree.

3. The parties agree, because defendant has altered the challenged practice and there is no indication whatsoever that it will be reimplemented, that the cases will be dismissed with prejudice subject to the enforcement of the Consent Decree.

4. The provisions of the Consent Decree bind all named plaintiffs and class members and there is no provision for opt outs from the Consent Decree.

5. The defendant shall not retaliate against the plaintiffs, any class members, any aggrieved parties or any person for their participation in this lawsuit or any of the underlying charges of discrimination leading to this lawsuit.

6. The defendant will continue to provide sex and race discrimination training to its employees over the next three years. Specifically, the existing training programs and the programs planned for the next three years are acceptable to all parties. Should Acipco be required to amend the training programs that are currently scheduled for the next three years, it will immediately notify the EEOC of any changes. Upon request by the EEOC, defendant shall provide to the EEOC the number of employees who attended each type of training course for the immediately preceding calendar year.

7. The plaintiff class will pay the cost of mailing the notices to the named plaintiffs and class members.

8. The defendant will pay the fees of the Special Master for services rendered to date.

9. The defendant will pay the mediator's fees incurred for the mediation occurring in April and May 2000.

10. The defendant will have the right to review and comment upon any press release issued by the EEOC prior to its issuance.

## DISCUSSION

The question before the Court is whether the proposed settlement should be approved. The burden of proving of the fairness, reasonableness and adequacy of the proposed settlement is on the proponents. For the reasons stated herein, the Court finds this burden has been met.

There is a strong public policy in favor of settlement of Title VII claims. A settlement produces an amicable resolution of disputes and minimizes demands on judicial time and resources. The Supreme Court has stated that this policy is particularly important in the resolution of cases brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., because of the "strong preference" of Congress for "encouraging voluntary settlement of employment discrimination claims." Carson v. American Brands, 450 U.S. 79, 88 n.14 (1981). See also Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1977); United States v. City of Hialeah, 140 F.3d 968, 974 (11th Cir. 1998). In Holmes v. Continental Can Co., 706 F.2d 1144, 1147 (11th Cir. 1983), the Eleventh Circuit recognized this policy, stating that "settlement is the preferred method of resolving Title VII suits." See also United States v. City of Hialeah, 140 F.3d at 974; United States v. City of Miami, 664 F.2d 435, 442 (5th Cir. 1981) (en banc); United States v. Allegheny-Ludlum Indus., Inc., 517 F.2d 826, 846-48 (5th Cir. 1975), cert. denied, 425 U.S. 944 (1976).

The Summary of Prior Proceedings, supra, attests to the fact that these three consolidated actions have been vigorously contested. The present settlement was reached at a very late stage, after the liability issues had been fully litigated and after the monetary relief stage had been fully developed. Indeed, an extremely large record has been compiled. Plaintiffs' attorneys, the EEOC and defendant's attorneys have been involved in these actions throughout most of the history of the three cases. They are experienced attorneys in the area of employment discrimination, appearing in both the federal district courts and appellate courts on a regular basis.

In <u>Pettway v. American Cast Iron Pipe Co.</u>, 576 F.2d 1157 (5th Cir. 1978), <u>cert. denied</u>, 439 U.S. 1115 (1979) (<u>Pettway IV</u>), the Court stated that one factor the trial court should consider in determining the fairness of a Title VII class action settlement is "the judgment of experienced counsel for the parties." 576 F.2d at 1215. Similarly, in <u>Cotton v. Hinton</u>, 559 F.2d 1326, 1330 (5th Cir. 1977), the Court declared that the trial court "should be hesitant to substitute its own judgment for that of counsel." This litigation has progressed to a point at which counsel and the Court are fully capable of evaluating plaintiffs' claim for relief and the probable course of future litigation, and counsel for all parties have determined that the present settlement is fair, reasonable and adequate. This is one factor favoring approval of the settlement.

In <u>Pettway IV</u>, the Court also stated that a significant factor in assessing the fairness of a proposed settlement in a Title VII class action is the views of the class representatives. 576 F.2d at 1216; <u>see also</u> <u>United States v. City of Montgomery, Ala.</u>, 948 F. Supp. 1553, 1568 (M.D. Ala. 1996). The Court has previously determined that the named plaintiffs, as class representatives, will adequately protect the interest of the class. The named plaintiffs and class representatives in this class action have approved the terms of the present settlement, and the Court finds that this is another factor favoring approval of the settlement.

In <u>Cotton v. Hinton, supra,</u> the Court stated that "the number of objections is a factor to be considered . . . and a settlement can be fair notwithstanding a large number of class members who oppose it." 559 F.2d at 1331. <u>See also</u> <u>Pettway IV</u>, 576 F.2d at 1215. *There was only one objection to the present settlement. Thus, not only did counsel for the parties and all of the named plaintiffs approve the settlement, almost 100% of the class also approved the settlement.* <u>Compare</u> <u>Pettway v. American Cast Iron Pipe Co.</u>, 721 F.2d 315 (11th Cir. 1983) (<u>Pettway VI</u>) (settlement approved

where 5% of class objected); Huguley v. General Motors Corp., 999 F.2d 142, 145 (6th Cir. 1993) (settlement approved over objections of 15% of the class); County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1299 (2nd Cir. 1990) (settlement approved over objections of the majority of the class representatives); Bryan v. Pittsburgh Plate Glass Co., 59 F.R.D. 616 (W.D. Pa. 1973), aff'd, 497 F.2d 799 (3rd Cir.), cert. denied, 419 U.S. 900 (1974) (settlement approved where 20% of class objected); Boyd v. Bechtel Corp., 485 F. Supp. 610 (N.D. Cal. 1979) (settlement approved where 16% of class objected). The Court finds that this is yet another factor favoring approval of the settlement.

The Court is not content, however, to rely totally on the foregoing factors that favor approval of the settlement. While the trial court in approving a settlement does not have "the right or duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute," the court should compare the benefits of the settlement "with the likely rewards the class would have received following a successful trial of the case." Cotton v. Hinton, 559 F.2d at 1330; Pettway IV, 576 F.2d at 1214 n.69.

This litigation is fraught with uncertainty for all parties. Initially, the jury found in favor of the plaintiff class on the issue of liability. However, since the jury trial, the number of class members and plaintiffs who desire to participate in these lawsuits has been substantially lower than originally estimated. Also, the amount of back pay has been substantially less than originally estimated by the plaintiffs based on the Court's determination that the measure of back pay was actual economic loss rather than a formula-based calculation. While there are approximately 160 class members who are entitled to assert claims for compensatory damages under the Civil Rights Act of 1991, based on the amount of back pay, the defendant claims that compensatory damages would be less than originally

claimed by the plaintiffs. In light of the foregoing, the Court finds that there are both strengths and weaknesses in each party's position. This uncertainty of outcome is another factor favoring approval of the settlement. See Reed v. General Motors Corp., 703 F.2d 170, 175 (5th Cir. 1983) ("uncertainty is a catalyst of settlement").

The Notice to the class fully described the amount of fees and expenses which are scheduled to be paid to the attorneys for the class and the EEOC. There were no objections made concerning the reasonableness of the attorneys' fees.

The Court examined the reasonableness of attorneys' fees prior to giving preliminary approval to the proposed Consent Decree. At that time, the parties represented to the Court that their respective positions were not affected by any consideration of attorneys' fees and expenses to be paid to plaintiff's counsel. The issue was negotiated on its own merits without regard to any other terms of the proposed Consent Decree. Based on all of the evidence and the Court's own independent knowledge of the efforts of the attorneys for the class, the Court finds that the attorneys' fees and expenses requested by counsel for the Plaintiffs are reasonable.

Finally, the Court finds that all of the requirements contained in Rule 23 of the Federal Rules of Civil Procedure are satisfied in this case.

## CONCLUSION

The Court has carefully considered the terms of the parties' settlement in light of all of the evidence, arguments, previous decisions which have been entered in these actions and the applicable law. The Court finds that the parties have carried their burden of proving that all of the terms and

provisions of the settlement are within the range of what could have reasonably been expected to have been awarded at trial. The Court also finds that the class representatives and the attorneys for the class have provided adequate representation of the interests of every member of the class and that the settlement is a fair, adequate and reasonable disposition of the claims of the plaintiffs and the plaintiff class. It is approved.

DONE this 3rd day of January, 2001.

_____
UNITED STATES DISTRICT JUDGE